UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MYRON FRANKLIN,
     Plaintiff,

vs.                       Case No.: 3:21cv798/MCR/ZCB

JEFFREY NOUSIAINEN, et al.,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff is a *pro se* prisoner who has sued seven corrections officers and two nurses for civil rights violations under 42 U.S.C. § 1983.   Plaintiff claims the corrections officers violated the Eighth Amendment by either using excessive force against him or failing to intervene when others used excessive force.   He further claims the nurses were deliberately indifferent to his serious medical needs, also in violation of the Eighth Amendment.   Four of the seven corrections officers (Defendants Chopp, Nousiainen, Gennaro, and Twiddy) have moved for summary judgment.   (Doc. 50).   Plaintiff has responded in opposition.   (Doc. 57).   As explained below, Defendants' motion for summary judgment should be denied.

### I.     Background

#### A. Plaintiff's version of events

On June 19, 2018, Plaintiff was an inmate at Okaloosa Correctional Institution (OCI).   (Doc. 49 at 5).   Defendants Chopp, Nousiainen, Gennaro, and Twiddy were

1

employed at OCI as corrections officers.  At approximately 5:40 p.m., Defendants Matthews and Coultas were escorting Plaintiff from the dormitory to medical for a pre-confinement assessment.   (Doc. 57 at 1, 18).  Although Defendants claim Plaintiff was being confined due to a disciplinary infraction, Plaintiff says it was in retaliation for filing grievances.  (Doc. 57 at 1, 5).

While Plaintiff was being escorted to medical, his hands were handcuffed behind his back.  (Doc. 49 at 5).  During the escort, Defendant Matthews punched him in the face "with a closed fist."  (*Id.*).[1]  Plaintiff claims this act was unprovoked, and he denies being disruptive or violent.  The punch knocked Plaintiff to the ground, and Plaintiff alleges Defendant Matthews proceeded to "punch" Plaintiff "4 or 5 times" while he was on the ground.  (*Id.*).  Plaintiff states Defendant Matthews then "placed both of his hands on the side of [Plaintiff's] face and started smashing [Plaintiff's] face into the ground."  (*Id.*).

As Plaintiff was face-down on the ground, Defendant Twiddy applied pressure to his elbows, causing Plaintiff's handcuffs to cut into his wrists.  (*Id.*).  He further claims that Defendant Twiddy "picked [him] up in the air and slam[ed] [him] into the ground [,] injuring [his] right shoulder."  (*Id.*).  And he claims Defendant

---

[1] Only Defendants Chopp, Nousiainen, Gennaro, and Twiddy have moved for summary judgment.  (Doc. 50 at 1).  To paint the full picture of Plaintiff's excessive force claims, however, the Court summarizes the excessive force allegations in their entirety including those made against the officers who have not moved for summary judgment.

Twiddy pushed Plaintiff's "arms and hands violently up and forward" while Plaintiff was handcuffed on the ground.  (*Id*. at 6).

Defendant Chopp allegedly witnessed the other officers engage in the conduct described above and "stood idle and encouraged their actions," instead of intervening.  (*Id*.).  According to Plaintiff, Defendant Gennaro similarly witnessed the incident and encouraged the other officers instead of intervening.  (*Id*.).  The same for Defendant Toole—another officer who allegedly stood by encouraging the excessive force instead of intervening to assist Plaintiff.  (*Id*.).

As a result of Defendants' actions, Plaintiff claims he suffered injuries to his wrists, ankles, shoulders, and back.  (*Id*. at 6, 16).  Plaintiff has also stated in his response to the motion for summary judgment that he suffered a head laceration when he was slammed to the ground.  (Doc. 57 at 7).  According to Plaintiff, the medical records do not reflect the severity of his injuries because he was denied timely and appropriate medical care by the medical staff.  (Doc. 49 at 16).  Plaintiff has provided medical records from ten days after the incident that show he had a "healing superficial abrasion to [right] shoulder" and "discoloration to [left] and [right] ankle."  (Doc. 57 at 19).  Plaintiff has also provided a statement from another inmate, Milton Wilcox, declaring that he saw Plaintiff "barely able to walk," heard him complaining to staff that his shoulder had been broken, and observed injuries to Plaintiff's ankles and shoulders.  (*Id.* at 58).

3

**B. Defendants' version of events**

Defendants Chopp, Nousiainen, Gennaro, and Twiddy tell a different story about what happened on June 19, 2018. They claim that at approximately 5:40 p.m., Defendants Matthews and Coultas were escorting Plaintiff to medical for a pre-confinement assessment because of a prior infraction.[2] (Doc. 50 at 3). During the escort, Defendants say Plaintiff became disorderly and non-compliant. (*Id.*). After being ordered to stop, Plaintiff tried to pull away from the officers. (*Id.*). At that time, Defendants Matthews and Coultas claim that they "redirected" Plaintiff "to a face-down prone position on the ground." (*Id.*).

Once Plaintiff was on the ground, Defendant Nousiainen placed a custodial hold on Plaintiff's legs until leg restraints were obtained. (*Id.*). Leg restraints were then placed on Plaintiff, and he was instructed to walk. (*Id.*). When Plaintiff refused to walk, Defendant Coultas ordered the use of a "shoulder lock transporter" to transport Plaintiff to medical for an assessment. (*Id.*). But Plaintiff kept resisting and attempted to "jump away" from Defendants. (*Id.*). Defendants responded by "redirect[ing] [Plaintiff] to a face-down prone position on the ground." (*Id.*). Because Plaintiff was spitting on the ground, Defendant Gennaro obtained a spit shield and placed it over Plaintiff's face. (*Id.* at 4). Plaintiff was then escorted to a

---

[2] There is nothing in the record to establish that there was a prior infraction. And it appears as though Defendants admit no infraction had been documented. (*See* Doc. 57 at 16-17).

medical triage room, where he refused treatment.  (*Id*.).  Plaintiff later pleaded "no contest" to a disciplinary report related to this incident.  (*Id*.).

### C. Lack of video footage of the incident

Neither party has provided the Court with video footage of the incident.  When Plaintiff requested the video footage, he was told there was none because the video equipment had been damaged by a lightning strike.  (Doc. 57 at 21).  Although at some point during the incident a handheld video camera was obtained by Defendant Toole, apparently it was not turned on when some of the physical force was applied against Plaintiff.  (Doc. 57 at 57).  Defendants claim the failure to turn on the camera was inadvertent.  (*Id*.).  Plaintiff claims it was intentional.  (Doc. 57 at 7).  Regardless, the Court does not have any video footage to review in connection with Defendants' motion for summary judgment.

## II.    Discussion

### A. Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id*. at 248.

The central summary judgment question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.  When answering that question, courts must view the evidence in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  And the nonmoving party bears the burden of coming forward with sufficient evidence on each element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A mere "scintilla" of evidence is insufficient to meet that burden.  *Young v. City of Palm Bay, Fla*., 358 F.3d 859, 860 (11th Cir. 2004).  At the summary judgment stage, the judge is "not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## B. Eighth Amendment excessive force standard

To determine what facts are "material" at the summary judgment stage, courts look to the substantive law.  *Anderson*, 477 U.S. at 248.  Completing that task here requires an examination of the law governing Eighth Amendment excessive force claims.  Prison officials violate the Eighth Amendment prohibition against cruel and unusual punishment if they apply force "maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  The "core judicial inquiry" in Eighth Amendment excessive force cases "is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or

6

restore discipline, or maliciously and sadistically to cause harm." *Bowden v. Stokely*, 576 F. App'x 951, 953 (11th Cir. 2014) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)).   To determine if force was applied maliciously and sadistically to cause harm, the following factors should be considered: the extent of injury; the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials; and any efforts made to temper the severity of the response. *Hudson*, 503 U.S. at 7-8.

### C. Plaintiff's excessive force claim against Defendants Nousiainen and Twiddy

Defendants Chopp, Nousiainen, Gennaro, and Twiddy have moved for summary judgment.  (Doc. 50 at 1).  Their motion addresses Plaintiff's claim that Defendants Nousiainen and Twiddy used excessive force against him.[3]  Plaintiff claims that Defendant Nousiainen used excessive force by pushing him to the ground when he was handcuffed, pushing down on his feet while shackled to cause injury to his ankles, pushing his arms while handcuffed to cause injury to his shoulders, and picking him up and slamming him to the ground on his head.  (Doc. 49 at 5).  Plaintiff claims Defendant Twiddy unnecessarily pushed his arms down while he was handcuffed, which caused injury to his wrists.  (*Id*. at 5-6).  He further alleges

---

[3] Plaintiff's claims against Defendants Chopp and Gennaro are premised on a failure to intervene, and these claims are addressed later in this opinion.

that Defendant Twiddy slammed him to the ground and unnecessarily applied force to his right shoulder, causing injury to it. (*Id*.). According to Plaintiff, these actions by Defendants Nousiainen and Twiddy were unprovoked and done "maliciously and sadistically" to cause harm. (Doc. 57 at 1-2).

Not so according to Defendants Nousiainen and Twiddy. They claim to have only used as much force as was necessary to maintain control of Plaintiff after he became disruptive and non-compliant. (Doc. 50 at 6). Defendants Nousiainen and Twiddy primarily rely on use of force reports to support their version of events. (*Id*.). The use of force reports indicate that force was applied to Plaintiff on several occasions while he was in restraints. (Docs. 50-5, 50-6). The use of force reports describe Plaintiff as disruptive and state that force was only used after he tried to pull away from the officers. (*Id*.).

As previously mentioned, the Court has been provided with no video evidence of the incident. Thus, what the Court is left with is Plaintiff's allegations on the one hand and Defendants' statements on the other. Plaintiff says the incident unfolded in one way, and Defendants Nousiainen and Twiddy say it unfolded in an entirely different way. Clearly, one side is telling the truth and the other is not. At the summary judgment stage, however, it would be inappropriate for the Court to make credibility determinations or to weigh the evidence. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh

conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."). That is true even if the Court "believes that the evidence presented by one side is of doubtful veracity" because "it is not proper to grant summary judgment on the basis of credibility choices." *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006). Judging credibility is the jury's job. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013).

Because there is conflicting information in the record on material facts, the Court cannot grant summary judgment in favor of Defendants Nousiainen and Twiddy. There are disputes about what precipitated the use of force, and there are disputes about how much force and what type of force was used by Defendants Nousiainen and Twiddy. There are also disputes about what, if any, injuries resulted from the force used by Defendants Nousiainen and Twiddy. Those disputes are about material facts, as opposed to minor or trivial details. And if things happened as Plaintiff says they did, then a reasonable jury could find that Defendants Nousiainen and Twiddy used excessive force.

A court may grant summary judgment where the "opposing parties tell two different stories, one of which is blatantly contradicted by the record." *Scott*, 550 U.S. at 380. But this is not such a case. There is no video footage here, nor any statements from non-interested eyewitnesses to the incident. There is some evidence

in the record showing Plaintiff suffered injuries because of the incident. Additionally, Plaintiff has done more than rest on the allegations in his complaint— he has actively engaged in discovery and submitted a summary judgment opposition (complete with numerous documents obtained in discovery) that argues there are disputed issues of material fact in this case. There is nothing in the record that so blatantly contradicts Plaintiff's version of events that no reasonable jury could be expected to believe it. *See Sears v. Roberts*, 922 F.3d 1199, 1208-09 (11th Cir. 2019) (finding that summary judgment could not be granted in favor of corrections officers when there were no video recordings and the evidence in the record consisted of statements from the defendants and contradictory statements by the plaintiff).

None of the cases cited by Defendants Nousiainen and Twiddy alter that conclusion. First up is *Miles v. Jackson*, 757 F. App'x 828 (11th Cir. 2018). In that case, the prisoner admitted being non-compliant and evasive. Here, however, Plaintiff claims to have been compliant and denies resisting Defendants' efforts to move him from one place to another. (Doc. 49 at 5; Doc. 57 at 2). Next is *Reed v. Mitchem*, 707 F. App'x 617 (11th Cir. 2017). *Reed* is unhelpful because it involved a district court's finding that a prisoner was not credible after a bench trial. But the current case is at the summary judgment stage and not post-bench trial.

Similarly unpersuasive is Defendant's reliance on *Oliver v. Warden*, 761 F. App'x 960 (11th Cir. 2019). In *Oliver*, there was video evidence clearly supporting

Defendants' version of events.  On the contrary, there is no video evidence supporting Defendants in this case.  The next case cited by Defendants is *Smith v. Sect'y, Dept. of Corrections*, 524 F. App'x 511 (11th Cir. 2013).  There, the court accepted Plaintiff's version of events as true but concluded that the amount of force alleged (i.e., twisting arms upwards and pressing against the wall) was an unactionable *de minimis* use of force.  That is not what we have here.  Plaintiff has alleged more than *de minimis* force.  Indeed, Defendants' motion for summary judgment does not argue that Plaintiff has only alleged a *de minimis* use of force.

Finally, Defendants cite *Howard v. Memnon*, 572 F. App'x 692 (11th Cir. 2014).  But that case does not help Defendants.  It involved a situation where the plaintiff's version of events was "blatantly contradicted by the record," while the defendants "presented evidence" establishing that force was applied to maintain and restore discipline.  *Id*. at 695.  That is not the situation here—Defendants have not submitted evidence that is sufficient to "blatantly contradict" Plaintiff's allegations. Instead, the evidence submitted by Defendants consists of their own statements and use of force of reports completed regarding the incident.  The Eleventh Circuit has held that such evidence is generally insufficient to "blatantly contradict" a plaintiff's allegations because it does not "definitively establish[] what happened and what did not [happen]."  *Sears*, 922 F.3d at 1208-09 (explaining that incident reports, affidavits, and other "documentary evidence that consists mainly of various forms

11

of the[] [corrections officers'] own testimony" was insufficient to "blatantly contradict" the plaintiff's description of the incident); *see also Rivera v. LeBron*, 824 F. App'x 838, 842-43 (11th Cir. 2020) (reversing the district court's grant of summary judgment in favor of corrections officers when there was no video evidence and the evidence in the record primarily consisted of statements that "merely pit[ted] the correctional officers' word against an inmate's") (cleaned up).

When the evidence in the record is viewed in the light most favorable to Plaintiff (as the Court must do at the summary judgment stage), there is a "sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52. Accordingly, Defendants Nousiainen and Twiddy are not entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claim.

### D. Plaintiff's failure to intervene claim against Defendants Chopp and Gennaro

Plaintiff claims that Defendants Chopp, Gennaro, and Toole failed to intervene when other officers used excessive force against him. Only Defendants Chopp and Gennaro have moved for summary judgment, so the Court will limit its discussion to the allegations against those two Defendants.

In the Eleventh Circuit, "[a]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for failing to intervene, so long as he was in a position to intervene yet failed to do so." *Alston v. Swarbrick*, 954 F.3d 1312, 1321 (11th Cir.

2020) (cleaned up).   A failure to intervene claim hinges on the existence of a successful underlying excessive force claim. *Jacoby v. Baldwin Cnty.*, 666 F. App'x 759, 764 (11th Cir. 2016).

Here, Defendants Chopp and Gennaro argue summary judgment is warranted because excessive force was not used by the other officers and, therefore, Defendants Chopp and Gennaro had no duty to intervene.   Defendants Chopp and Gennaro do not make any other arguments regarding Plaintiff's failure to intervene claim.  (Doc. 50 at 9).   Because the Court has concluded that the underlying excessive force claim should go to a jury, and Defendants Chopp and Gennaro's argument rests entirely on the premise that there was no excessive force, there is no basis for granting them summary judgment on Plaintiff's failure to intervene claim.   Moreover, it is undisputed that Defendants Chopp and Gennaro were present at scene when excessive force was allegedly used.  (Doc. 49 at 6; Doc. 50 at 9).   Plaintiff claims Defendants "stood idle and encouraged" the Defendant officers while they "witness[ed]" the infliction of force on Plaintiff.  (Doc. 49 at 6).  There is no evidence that Defendants made any effort to intervene during the time Plaintiff claims to have been subjected to excessive force by other officers.   Defendants Chopp and Gennaro claim they did not have to intervene because what the other officers were doing was warranted and necessary.   Plaintiff says the opposite.   As explained above, who is correct is an issue for the jury to resolve in this case.

**E.  Defendants are not entitled to qualified immunity**

Defendants have also argued they are entitled to summary judgment based on qualified immunity.  (Doc. 50 at 10).  There is no merit to their argument because the Court has determined that Defendants are not entitled to summary judgment on the underlying Eighth Amendment claims.  As the Eleventh Circuit has explained, that ends the qualified immunity inquiry because:

> a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the U.S. Constitution . . . . There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation.

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (cleaned up).  Thus, if "the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment . . . . [then] that is the end of the inquiry."  *Id*.; *see also Bowden v. Stokely*, 576 F. App'x 951, 955 (11th Cir. 2014) (explaining that when there is a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity would be unwarranted); *Ash v. Landrum*, 819 F. App'x 770, 773 (11th Cir. 2020) (same).  Because the Court has determined that Plaintiff's excessive force claim is sufficient to survive summary judgment, there is no basis for granting summary judgment due to qualified immunity.

### III.    Conclusion

For the reasons above, the motion for summary judgment filed by Defendants Nousiainen, Twiddy, Chopp, and Gennaro lacks merit.    Accordingly, it is respectfully **RECOMMENDED** that the motion for summary judgment (Doc. 50) be **DENIED**.

At Pensacola, Florida this 5th day of January 2023.

/s/ *Zachary C. Bolitho*

Zachary C. Bolitho
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**