UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MYRON FRANKLIN,
        Plaintiff,

vs.                                    Case No.: 3:21cv00798/MCR/ZCB

JEFFREY NOUSIAINEN, et al.,
        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a *pro se* prisoner civil rights case filed under 42 U.S.C. § 1983.  (Doc.
1).  Currently before the Court is a motion for summary judgment (Doc. 92) filed by
Defendants Davis and Scott—two nurses who Plaintiff claims were deliberately
indifferent to his serious medical needs in violation of the Eighth Amendment.[1]
Plaintiff responded in opposition.  (Doc. 95).  For the reasons below, the motion for
summary judgment should be granted.

---

[1] The Court previously denied a motion for summary judgment filed by four
correctional officers who Plaintiff claims used excessive force in violation of the
Eighth Amendment.  (Docs. 72, 78).

1

# I.    Factual Background

## A. Plaintiff's allegations against Defendants Scott and Davis.

On June 19, 2018, Plaintiff was an inmate at Okaloosa Correctional Institution (OCI). (Doc. 49 at 5). Plaintiff claims that correctional officers escorted him to medical for a pre-confinement assessment with his hands handcuffed behind his back. (*Id*. at 5). During the escort, Plaintiff claims that the correctional officers physically assaulted him without provocation. (*Id*.). According to Plaintiff, when he was face-down on the ground, one of the officers applied pressure to his elbows, which caused the handcuffs to cut into his wrists. (*Id*.). Plaintiff further claims that he was "picked . . . up in the air and slam[ed] . . . into the ground[,] injuring [his] right shoulder." (*Id*.). And Plaintiff claims that his arms and hands were "violently" moved "up and forward" while he was handcuffed on the ground. (*Id*. at 6). As a result of the use of force by the correctional officers, Plaintiff claims he suffered injuries to his wrists, ankles, and shoulders. (*Id*. at 6, 16).

Shortly after the incident, Plaintiff met with Defendant Nurse Scott for a post use of force examination. (*Id.* at 6). According to Plaintiff, Defendant Nurse Scott refused to treat him and said "no, no, no I don't want to hear about that" when Plaintiff described his injuries. (*Id*.). Plaintiff further alleges Defendant Scott "can be seen" on the video "not even attempting to treat [his] injuries." (*Id*.). Plaintiff

says he was then placed in confinement without medical care, despite being in pain. (*Id.*).

Ten days later, on June 29, 2018, Plaintiff was seen by Defendant Nurse Davis. According to Plaintiff, Defendant Nurse Davis "falsified [Plaintiff's] medical records and would not document all of [his] injuries" that occurred during the use of force incident. (*Id.* at 16). Plaintiff alleges Defendant Davis "kept telling [Plaintiff] that the injuries were not enough to document." (*Id.*). Plaintiff says that, although ten days had passed, "the damage to [his] shoulders and ankles w[as] still visibly swollen." (*Id.*). Plaintiff asserts "these are the same injuries that Defendant Nurse Scott failed to treat on June 19, 2018." (*Id.*). Plaintiff claims to still be suffering from the injuries. (Doc. 95 at 3). In support of his claims, Plaintiff has filed medical records as well as various discovery materials exchanged with Defendants. (*See id.* at 6-21).

**B. Defendants' version of events.**

Defendants Scott and Davis tell a different story about what happened in this case. Defendant Scott denies refusing to treat Plaintiff after the use of force on June 19, 2018. According to Defendant Scott, Plaintiff refused medical treatment when she met with him for the post use of force examination. (Doc. 92 at 2). Defendant Scott has also submitted a medical assessment form that she filled out on June 19,

3

2018.  The form states that Plaintiff "refused assessment" and stated, "I'm straight" and "I don't need medical."  (Doc. 92-1 at 1-2).  Defendant Scott has also submitted statements from correctional officers who attest that Plaintiff "refused to allow medical to assess him" after the use of force.  (Docs. 92-2, 92-3).

Defendant Davis admits that she saw Plaintiff on June 29, 2018.  (Doc. 92 at 2).  But she denies that Plaintiff was suffering from any injuries beyond a "superficial abrasion to his right shoulder" and "discoloration" to his left and right ankles.  (*Id*.).  According to Defendant Davis, Plaintiff had no broken skin, and he had range of motion in each shoulder.  (*Id.*).  Defendant Davis submitted medical records from the June 29, 2018 visit with Plaintiff that support her version of events.  (Doc. 92-4, 92-5).

Plaintiff then had a sick call visit with Nurse Underwood (a non-party) on July 6, 2018.  During that visit, Plaintiff complained of stiffness.  (Doc. 92-4).  Nurse Underwood "palpated" Plaintiff's shoulder and ankle and noted that there were "no dislocations."  (*Id*.).  Nurse Underwood advised Plaintiff to submit another sick call request if his problem persisted.  (*Id*.).  On September 19, 2018, Plaintiff had an x-ray of his right shoulder.  The x-ray showed "mild degenerative changes," but "no shoulder fracture, separation, or dislocation."  (Doc. 92-5).

## II.    Discussion

### A. Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

At bottom, the summary judgment question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.  When answering that question, courts view the evidence in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  But the nonmoving party bears the burden of coming forward with sufficient evidence on each element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A mere "scintilla" of evidence is insufficient to meet that burden. *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004).  Likewise, speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).  When the plaintiff's version of events is "blatantly contradicted" by the record, a

court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

### B. Eighth Amendment deliberate indifference standard

To determine what facts are "material" at the summary judgment stage, courts look to the substantive law. *Anderson*, 477 U.S. at 248. Completing that task here requires an examination of the law governing Eighth Amendment deliberate indifference claims. The Eighth Amendment forbids the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has held that it is "cruel and unusual punishment" for prison officials to act with "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

That means prison officials are obligated to provide prisoners with "minimally adequate medical care." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). The deliberate indifference standard is much higher than simple negligence or medical malpractice. *Id*. at 1505. The Eighth Amendment does not require a prisoner's medical care to be "perfect, the best obtainable, or even very good." *Id*. at 1510. Indeed, the deliberate indifference standard is only met if medical care is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. 1505-06 (cleaned up). After all, it is

6

"obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

To prevail on a deliberate indifference claim, a plaintiff must satisfy two prongs—one objective, one subjective. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Satisfying the objective prong requires a plaintiff to show an "objectively serious medical need." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (cleaned up). A medical need is objectively serious if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention—that, if left unattended, poses a substantial risk of serious harm." *Id.* (cleaned up). To satisfy the subjective prong, a plaintiff must prove that prison officials "(1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) acted with more than gross negligence." *Wade v. McDade*, 67 F.4th 1363, 1374 (11th Cir. 2023). The plaintiff's burden of establishing the objective and subjective prongs is "steep." *Keohane*, 952 F.3d at 1266. As explained below, Plaintiff cannot meet that steep burden here.

**C. No reasonable jury could find that Plaintiff had an objectively serious medical need.**

Defendants Scott and Davis argue that summary judgment is warranted because no reasonable jury could find that Plaintiff suffered from an objectively serious medical need. (Doc. 92 at 8). The Court agrees.

Applying the serious medical need standard set forth above, nothing in the record shows that Plaintiff's injuries were "diagnosed by a physician as mandating treatment." *See Keohane*, 952 F.3d at 1266 (cleaned up). The medical records show that several months after the alleged use of force incident, Plaintiff received an x-ray of his shoulder. But that x-ray did not show any acute injury such as a fracture or dislocation that could have been caused by the alleged use of force. Instead, the x-ray showed that Plaintiff had "mild degenerative joint disease." (Doc. 92-5). Or to put it in layman's terms, Plaintiff has mild arthritis in his shoulder. *See generally* J.E. Schmidt, M.D., *Schmidt's Attorneys' Dictionary of Medicine* D-24, H-126 (1986) (defining "degenerative joint disease" as "hypertrophic arthritis," which is a "form of chronic arthritis"). There is no other evidence of any physician diagnosing Plaintiff with any injury or condition resulting from the alleged use of force.

Moreover, the alleged use of force by the corrections officers (from which Plaintiff claims to have suffered the injuries involved in this lawsuit) could not have caused Plaintiff to have mild degenerative joint disease. And, in any event, Plaintiff

8

has failed to come forward with evidence from which a reasonable jury could conclude that his mild degenerative joint disease was a serious medical need. There is nothing in the record showing that any physician determined that the issue "mandat[ed] treatment." *See Keohane*, 952 F.3d at 1266. Nothing in the record shows that a physician recommended surgery, physical therapy, narcotic pain relievers, steroid injections, or any other treatment for Plaintiff's mild degenerative joint disease.

There is also no reason to believe based on the information in the record that Plaintiff's mild degenerative joint disease was so obvious that a "lay person would [have] easily recognize[d] the necessity for a doctor's attention—that, if left unattended, poses a substantial risk of serious harm." *See id*. Plaintiff's shoulder was examined by Nurse Underwood (a non-party) on July 6, 2018, and nothing more than a "superficial abrasion" was observed. (Doc. 92-3, 92-4). Plaintiff had range of motion in the shoulder, although he complained of stiffness. (*Id*.). Nurse Underwood recommended Plaintiff take an over the counter anti-inflammatory. (*Id*.). There is nothing in the medical records, or other evidence before the Court, to show that Plaintiff's mild degenerative joint disease required any other type of treatment. Nor do the medical records show that the condition was worsening or progressing. Put another way, it was not a medical issue that "require[d] immediate

9

medical attention," *see Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010), or pose[d] a substantial risk of harm," *see Keohane*, 952 F.3d at 1266, to Plaintiff. Thus, no reasonable jury could find that it was an objectively serious medical need.

This conclusion finds support in precedent. *See, e.g.*, *Anciza v. Morales*, No. 4:09cv483, 2011 WL 2174135, at *5 (N.D. Fla. April 13, 2011) (finding that "degenerative" changes in the inmate's shoulder "that plausibly would not have been caused by trauma" and were treated only with anti-inflammatory medication did not constitute an objectively serious medical need); *Jackson v. Brown*, No. 3:17cv791, 2019 WL 3937808, at *10 (N.D. Fla. July 19, 2019) (finding no deliberate indifference to a serious medical need when the plaintiff's x-ray showed only "mild degenerative changes . . . with no acute bone abnormality"); *Brewington v. Vaslenko*, No. CV421-261, 2022 WL 18356627, at *4 (S.D. Ga. Dec. 5, 2022) (finding no deliberate indifference to a serious medical need where the plaintiff "suffered relatively minor pain" from arthritis).

Similarly, the abrasion, bruising/discoloration, and swelling that Plaintiff experienced do not qualify as serious medical needs. Although the medical records show Plaintiff experienced those things, no physician found that those injuries required treatment. Nor does the evidence in the record show that a layperson would have "easily recognize[d]" that these injuries, if "left unattended, pose[d] a

10

substantial risk of serious harm." *See Keohane*, 952 F.3d at 1266.  The medical records refer to Plaintiff's abrasion as "superficial," (Doc. 92-3), and there is no evidence that it was ever bleeding profusely, infected, or otherwise potentially serious.  There is also no evidence showing that Plaintiff's bruising/discoloration and swelling were unusually painful or otherwise more severe than a normal cut, bump, or bruise.  Accordingly, no reasonable jury could find that Plaintiff's laceration, swelling, and discoloration/bruising were objectively serious medical needs.

Support for that conclusion can be found in the Eleventh Circuit's decision in *Fernandez v. Metro Dade Police Dept.*, 397 F. App'x 507 (11th Cir. 2010).  In that case, the plaintiff alleged that he suffered a bloody nose, cuts, and bruising due to excessive force.  *Id*. at 512.  He claimed that the defendants were deliberately indifferent to his serious medical needs when they failed to promptly treat his injuries. *Id*. at 507.  Rejecting that claim, the Eleventh Circuit held that Plaintiff's injuries were not serious medical needs.  *Id*. at 514. According to *Fernandez*, although the injuries "likely caused pain and discomfort" they were not injuries that "if left unattended, pose[d] a substantial risk of serious harm" as required for a deliberate indifference claim.  *Id*.  The same is true here, just as it was in other cases involving similar circumstances.  *See, e.g.*, *Slaughter v. Gramiak*, No. 5:15-cv-90,

11

2021 WL 2982314, at *4 (S.D. Ga. May 19, 2021) (recognizing that "injuries such as cuts and bruises resulting from an assault do not amount to a serious medical need"); *McKnight v. Garriott*, No. 3:15-cv-159-J-39, 2018 WL 6019706, at *19 (M.D. Fla. Nov. 16, 2018) (finding that swelling and abrasions were not serious medical needs); *Charles v. Nanley*, No. 14-62816, 2017 U.S. Dist. LEXIS 12441, at *50 (S.D. Fla. Jan. 27, 2017) (same).  Because no reasonable jury could find that Plaintiff suffered an objectively serious medical need, Defendants Davis and Scott should receive summary judgment on Plaintiff's deliberate indifference claim.

### D. No reasonable jury could find that Defendants Davis and Scott knew of a serious risk of harm and intentionally disregarded that risk.

Even if Plaintiff could show he had an objectively serious medical need, summary judgment for Defendants Davis and Scott would still be appropriate because no reasonable jury could find that they "(1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) acted with more than gross negligence." *See Wade*, 67 F.4th at 1374.

With respect to Defendant Scott, Plaintiff claims that she denied him treatment by failing to conduct a post use of force examination.  Defendant Scott disagrees and says that Plaintiff refused to be evaluated.  Accepting Plaintiff's version of events as true, no reasonable jury could conclude that Defendant Scott's failure to conduct a post use of force exam was deliberate indifference.  It is

undisputed that Plaintiff was seen and evaluated ten days later by Defendant Davis. And Defendant Davis noted some minor injuries, but none that required any treatment. There is nothing in the medical records to show that Defendant Scott's failure to evaluate Plaintiff shortly after the alleged incident exacerbated his injuries. Thus, Plaintiff has not met his burden of "plac[ing] verifying medical evidence in the record to establish the detrimental effect of [a] delay in medical treatment," which is necessary for Plaintiff "to succeed," *see Fernandez*, 397 F. App'x at 512, on his deliberate indifference claim against Defendant Scott.

As for Defendant Davis, Plaintiff's deliberate indifference claim is based on his disagreement with Defendant Davis's determination that Plaintiff's injuries were minor and did not require further treatment. [2]  The law in the Eleventh Circuit is clear, however, that a "difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not establish deliberate indifference. *Harris*, 941 F.2d at 1505; *see also Cameron v.*

---

[2] To the extent Plaintiff argues that Defendant Davis acted with deliberate indifference by failing to follow proper procedures regarding the documentation of injuries, such an argument is without merit. *See Sanders v. Starling*, No. 21-12622, 2022 WL 6644768, at *3 (11th Cir. Oct. 11, 2022) (holding that "shortcomings in the nurses' documentation or their adherence to protocol amount to a claim that they violated prison regulations, not the Eighth Amendment"); *see also Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000) ("[F]ailure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence.").

*Allen*, No. 2:10-CV-00842, 2013 WL 5441774, at *11 (M.D. Ala. Sept. 27, 2013)

(holding that a medical provider's decision not to order an orthopedic evaluation of

the inmate's shoulder was a mere difference in medical opinion that did not give rise

to a deliberate indifference claim); *Mackler v. Chapman*, No. 1:11cv45, 2011 WL

9521094, at *5 (M.D. Ga. May 11, 2011) (finding no deliberate indifference where

the inmate "prefer[red] to have surgery on his shoulder" but the physician disagreed

with that course of action). The evidence also shows that when Plaintiff did receive

x-rays, he had no acute injury and only a mild degenerative condition in his shoulder.

(*See* Doc. 92-5). Thus, "there is simply no objective evidence showing that

Defendant [Davis]'s decisions concerning Plaintiff's medical care were based on or

influenced by deliberate indifference to Plaintiff's well-being." *See Faheem v.

Gaminara*, No. 11-80122, 2012 WL 12950514, at *10 (S.D. Fla. Apr. 10, 2012)

(granting summary judgment when the inmate believed he was entitled to a medical

treatment that was different than what he received).

At the end of the day, the evidence in the record is insufficient for a reasonable

jury to conclude that Defendants Scott and Davis acted with deliberate indifference

to Plaintiff's serious medical needs. The Eighth Amendment is only violated if the

medical treatment provided is "so grossly incompetent, inadequate, or excessive as

to shock the conscience or to be intolerable to fundamental fairness." *Rogers v.*

*Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). This case does not satisfy that standard. The evidence in the record, when construed in Plaintiff's favor, is such that no reasonable jury could find that the medical care he received crossed the line that separates acceptable (or even negligent) care from unconstitutional behavior. Thus, Defendants Scott and Davis are entitled to summary judgment on Plaintiff's Eighth Amendment deliberate indifference claims.

### III.    Conclusion

For the reasons above, the undersigned respectfully **RECOMMENDS** that:

1. The Motion for Summary Judgment (Doc. 92) filed by Defendants Scott and Davis be **GRANTED;**

2. Defendants Davis and Scott be terminated from this case; and

3. This matter be referred back to the undersigned for further proceedings.

At Pensacola, Florida this 10th day of October 2023.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

### <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of this Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> An objecting party must serve a copy of**

15

the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.